UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**DEBRA MCCOSKEY-REISERT,**

    **Plaintiff,**

v.   CASE #

**NEW YORK LIFE INSURANCE COMPANY
AS SUCCESSOR IN INTEREST OF
LIFE INSURANCE COMPANY OF NORTH AMERICA,**

    **Defendant.**
_____/

## COMPLAINT

The Plaintiff, DEBRA MCCOSKEY-REISERT (MCCOSKEY-REISERT), sues Defendant, NEW YORK LIFE GROUP BENEFIT SOLUTIONS (NEW YORK LIFE) as successor in interest of Life Insurance Company of North America (LINA), and states:

### Jurisdiction and Venue

1. This is an action for relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et. seq.

2. This Court has jurisdiction pursuant to ERISA § 502, 29 U.S.C. §1132.

3. NEW YORK LIFE is an insurance company licensed to transact business in Florida, which is or was at all relevant times engaged in business in this District.

4. MCCOSKEY-REISERT lives withing this District,

5. MCCOSKEY-REISERT was at all relevant times employed by THE UNIVERSITY OF ARIZONA GLOBAL CAMPUS ("UAGC"), previously, "ASHFORD UNIVERSITY", at a location within this District.

6. UAGC is the Plan Sponsor of an employee benefit plan providing disability benefits to its employees (the Plan).

7. At all relevant times, MCCOSKEY-REISERT is and/or was a participant in the Plan incident to her employment.

8. Venue is proper within this District.

**Standard of Review Applicable to this ERISA Action**

9. UAGC funded its Plan by purchasing a group policy of insurance (Policy # LK-0962472) issued by LINA, now NEW YORK LIFE. A copy of the Long Term Disability policy is attached hereto as Exhibit "A".

10. NEW YORK LIFE made benefits determinations under the group policy it issued, including the determination made on Plaintiff's claim.

11. The Plan's terms do not grant discretionary authority to NEW YORK LIFE. Alternatively, the Plan Administrator or Plan Sponsor did not properly delegate discretion to NEW YORK LIFE.

12. The Long Term Disability group policy was drafted in its entirety by NEW YORK LIFE.

13. The Long Term Disability group policy is a contract of adhesion.

14. NEW YORK LIFE and UAGC use the group insurance policy issued by NEW YORK LIFE (Exhibit A) as both the Plan document and policy language.

15. No other plan documents exist other than the group insurance policy (Exhibit A).

16. No originating plan document exists that instituted the Plan.

17. No originating plan document or other document exists in which NEW YORK LIFE reserved any discretionary authority to itself in relation to the Plan.

18. The employees or agents of NEW YORK LIFE and UAGC did not discuss or correspond about the existence, meaning, or significance of delegating discretionary authority from UACG to NEW YORK LIFE.

19. At the inception of the Plan, UAGC did not retain to itself the authority to delegate discretionary authority of any type to an insurance company from which it was to purchase an insurance policy to fund the Plan.

20. At the time it purchased the Long Term Disability group insurance policy from NEW YORK LIFE, UAGC did not have any discretionary authority which it could delegate to an insurance company.

21. There is no mention of any delegation of discretion to NEW YORK LIFE within the four corners of the Long Term Disability group insurance policy which funds the Plan.

22. NEW YORK LIFE was not delegated discretionary authority such that its claim decision is entitled to a discretionary or arbitrary and capricious standard of review, because of one or more of the following:

a) UAGC never had the authority to delegate discretion to NEW YORK LIFE following the inception of its disability plan;

b) Discretionary authority is a material concept that NEW YORK LIFE never discussed or negotiated with UAGC;

c) The Long Term Disability group insurance policy is a contract of adhesion drafted entirely by the funding source company which cannot inject discretion into the plan for the first time;

d) If it had the power to delegate discretion, UAGC did not properly delegate discretionary authority over claims decisions to NEW YORK LIFE.

23. De novo review applies to this action.

24. To the extent that this court determines that de novo review does not apply to this action, NEW YORK LIFE pays claims from its own

general assets as the claims decision maker and funder of the group insurance policy, and NEW YORK LIFE operates under a conflict of interest.

25. NEW YORK LIFE is the Plan's claims administrator; handling claims under the insurance policy.

26. Any claims paid under the Long Term Group Insurance Policy, are paid by NEW YORK LIFE entirely from NEW YORK LIFE's assets.

27. No assets of UAGC are used to pay claims under the Long Term Disability group insurance policy.

## Claim for Disability Benefits Under the Plan

28. MCCOSKEY-REISERT stopped working on April 29, 2020, because of the following medical conditions: post-traumatic stress disorder, obsessive compulsive disorder, and major depressive disorder.

29. At all relevant times, a Plan participant is and was eligible to receive Long Term Disability benefits when the participant meets the following definition stated in the group insurance policy funding the Plan:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
> 1. unable to perform the material duties of his or her Regular Occupation; and
> 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:

> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
> 2. unable to earn 80% or more of his or her Indexed Earnings.
>
> The Insurance Company will require proof of earnings and continued Disability.

30. MCCOSKEY-REISERT applied and was approved for Long Term Disability benefits under the Plan.

31. NEW YORK LIFE terminated MCCOSKEY-REISERT's benefits Long Term Disability benefits on May 18, 2021.

32. The basis for NEW YORK LIFE's initial denial was that MCCOSKEY-REISERT did not meet the Plan's definition of disability because it claimed MCCOSKEY-REISERT's symptoms were not consistent with functional incapacity from a psychiatric standpoint.

33. MCCOSKEY-REISERT submitted a timely appeal of the denial of benefits to NEW YORK LIFE on October 29, 2021.

34. At all relevant times, MCCOSKEY-REISERT met the terms of the Plan's definition of "disabled."

35. MCCOSKEY-REISERT's post-traumatic stress disorder, depression, and obsessive compulsive disorder has caused MCCOSKEY-REISERT to experience memory problems, unpredictable crying spells and panic attacks.

36. The unpredictability if MCCOSKEY-REISERT's symptoms prevent her from performing the material duties of her occupation or any occupation

37. MCCOSKEY-REISERT's treating providers have not issued a release to return to work.

38. On December 10, 2021, NEW YORK LIFE upheld its original decision and denied MCCOSKEY-REISERT's appeal, stating it psychiatry peer reviewer did not find adequate support for underlying psychiatric restrictions and limitations due to a severely impairing condition, to prevent MCCOSKEY-REISERT from working.

39. NEW YORK LIFE has refused to pay the benefits sought by MCCOSKEY-REISERT and as grounds for such refusal has alleged that Plaintiff does not meet the definition of disability in the Plan.

40. With respect to all claims made herein, MCCOSKEY-REISERT has exhausted all administrative/pre-suit remedies.

41. MCCOSKEY-REISERT is entitled to certain benefits under the Plan consisting of benefits for Long Term Disability from May 18, 2021, through the date of filing this action.

42. MCCOSKEY-REISERT's gross plan benefit is $3,944.00 per month.

43. There are 14.30 months of past-due monthly benefit payments owed through the date of filing this action

44. NEW YORK LIFE has deprived MCCOSKEY-REISERT of the aggregate sum of $58,275.35.

45. Plaintiff is entitled to benefits herein because:

   a. The benefits are permitted under the Plan.

   b. Plaintiff has satisfied all conditions to be eligible to receive the benefits.

   c. Plaintiff has not waived or relinquished entitlement to the benefit.

46. Each monthly benefit payment owed is a liquidated sum and became liquidated on the date the payment was due and payable. Plaintiff seeks prejudgment interest on each such payment.

47. Pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), MCCOSKEY-REISERT is entitled to an award of reasonable attorney fees and costs incurred in an action brought under ERISA. Plaintiff has been required to obtain the undersigned attorney to represent her in this matter and has agreed to a reasonable attorney fee as compensation to him for his services.

WHEREFORE, the Plaintiff, DEBRA MCCOSKEY-REISERT, asks this Court to enter judgment against the Defendant, NEW YORK LIFE GROUP BENEFITS SOLUTIONS, a foreign corporation, finding that:

(1) The Plaintiff is entitled to Long Term Disability benefits from May 18, 2021, through the filing of this lawsuit; and

(2) The Plaintiff must be awarded benefits in the amount not paid to the Plaintiff from May 18, 2021, to the date of filing this lawsuit total of $58,275.35 together with prejudgment interest at the legal rate on each monthly payment from the date it became due until the date it is paid; and

(3) The Plaintiff must be awarded reasonable attorney fees and costs incurred in this action; and

(4) For such other and further relief as this Court deems just and proper, including but not limited to:

   a. a declaration that Plaintiff's same claim for benefits continues after the last date of benefits awarded by the Court, without need to file a new application for benefits, and

   b. remanding Plaintiff's claim to the Plan Administrator for further action to address continuing benefits after the final date of benefits awarded by this Court, and

   c. ordering Defendant to advise Plaintiff's former employer or any other necessary entity that benefits in this action were properly paid through the date of this Court's Order awarding benefits for purposes of coordinating or

reinstating any ancillary benefits which should properly be paid or for which coverage should be awarded as a result of Plaintiff's receipt of disability benefits under the Plan.

Signed this 3rd day of November, 2022.

    /s/ William C. Demas
WILLIAM C. DEMAS, ESQUIRE
Florida Bar # 0142920
TUCKER DISABILITY LAW, P.A.
5235 16th St. North
St. Petersburg, FL  33703
Tel.:  (727) 572-5000
Fax:  (727) 571-1415
demas@tuckerdisability.com
*Lead Attorney and Lead Counsel for the Plaintiff*

    /s/ John v. Tucker
JOHN V. TUCKER, ESQUIRE
Florida Bar # 0899917
TUCKER DISABILITY LAW, P.A.
5235 16th St. North
St. Petersburg, FL  33703
Tel.:  (727) 572-5000
Fax:  (727) 571-1415
tucker@tuckerdisability.com

Attorney and Co-Counsel for Plaintiff